JOHN C. TINNEY, Respondent, v. THE NEW JERSEY STEAMBOAT COMPANY, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, JANUARY, 1872.)

On the trial of an action for damages, on account of injuries received from the falling of an upper berth upon the plaintiff, while sleeping as a passenger on the defendant's boat, in the berth beneath, the plaintiff objected to the defendant's showing by its agent, who testified to an acquaintance with the construction of the berths of steamboats, that the berth in question was properly constructed.—*Held*, that the evidence should have been received.

And where the question was as to the effect of the injuries to the plaintiff's sight, and the defendant requested a charge, that "considering the extraordinary character of the injuries alleged in this case, and the great difficulty attendant upon their proper investigation, great weight should be given by the jury to the opinion of scientific witnesses, accustomed to investigate the causes and effects of the injuries to the eye, and a distinction should be made in favor of the opinion of those accustomed to use the most perfect instruments and processes, and who are acquainted with the most recent discoveries of science, and most improved methods of treatment and investigation,"—*Held*, that the charge was proper and should have been made.

*Held*, further, where the injuries (if any) were shown to be merely temporary loss of sight, that a verdict of $5,000, was excessive.

THIS was an appeal by the defendant from a judgment entered upon the verdict of a jury in favor of the plaintiff, and from an order denying a motion for a new trial.

The plaintiff sued the New Jersey Steamboat Company, claiming damages for injuries received, as a passenger on one of its night boats, the steamboat "Dean Richmond."

The evidence on the part of the plaintiff tended to show that he had taken his passage and secured a berth on the "Richmond," for the trip from New York to Albany, on the night of April 21, 1867; that while sleeping in the berth, which was an under berth, that above being occupied by a stranger, and on the touching of the boat at the dock in Albany, the latter berth was warped from its stays and gave way, coming down on him and causing severe bruises to his

head and left eye, and it was claimed that permanent injuries had resulted to the plaintiff's eyesight, after the healing of the bruises. To the fact that the powers of vision were greatly impaired, the plaintiff positively testified; and he proved, by the physician who attended him for the injuries, that he had been severely bruised about the forehead and cheek, and in the region of the left eye, and so as to cause the eye to close and to become congested with blood; that the bruises were healed, and the inflamation and congestion passed off, when the plaintiff began to complain of other difficulties, and was recommended by the witness to consult an oculist, which he did. This witness testified, however, that he was not a specialist in regard to diseases of the eye, and not able to make use of the ophthalmoscope and stereoscope.

The defendant called the oculist who had been consulted by the plaintiff, and proved him to be specially conversant with the treatment of diseases and affections of the eye, and capable of making use of the ophthalmoscope, and all other instruments in use in that branch of practice, and his testimony tended to show that there was no defectiveness of sight in the plaintiff's case. This testimony was based upon experiments made with the ophthalmoscope, and other instruments for testing the power and amount of vision, and the experiments were explained in detail by the witness, and the defendant requested, among other things, that the court should charge as follows, viz. :

" Twelfth. Considering the extraordinary character of the injuries alleged in this case, and the great difficulty attendant upon their proper investigation, great weight should be given by the jury to the opinion of scientific witnesses, accustomed to investigate the causes and effects of injuries to the eye, and a distinction should be made in favor of the opinion of those accustomed to use the most perfect instruments and processes, and who are acquainted with the most recent discoveries of science and most improved methods of treatment and investigation."

To which the court replied: " That is all a question for

you. I shall not charge you any such thing. It is not the business of the court to settle the weight of the evidence." To this refusal defendants excepted.

The defendant also called a witness, who testified that he was a manufacturer of furniture, dealer in beds, cots, etc., and had examined the construction of the berths of the Dean Richmond, after the alleged accident, and who described their mode of construction. He was not, however, upon the defendant's objection, permitted to give an opinion as to whether they were safely constructed or not. The defendant then called one Dumont, whose examination was as follows, viz.:

"Robert S. Dumont, called for defendant, and duly sworn, testified: I am, and have been for sixteen years, general agent of the defendant. My business lies at Albany, about the State, and sometimes in New York. I make my quarters here at the office. I know the Richmond, and have since she came out.

"Q. Has there been any change, since she came out, in the plan or construction of her berths? A. No; I think not. I am pretty generally acquainted with all the important changes made in the boats or business of the defendant. I have no knowledge of any such change. I have been engaged in the transportation business ever since I was a boy; in this business fifteen or sixteen years.

"Q. Are you acquainted with the construction of berths of steamboats generally? A. Somewhat; yes.

"Q. Were the berths on the Richmond constructed in the most approved manner of the best steamboats built about their time and since?

"(Plaintiff objects that the witness is not competent. Objection sustained, and defendant excepts.)

"Cross-examination: I have not been present and knowing to every change, alteration and repair which may have been made to the Richmond.

"Q. Your acquaintance and knowledge is confined to any general change in the boat or her construction, applicable to

the whole boat, is it not? A. Yes; I think if there had been any material change I should have been aware of it."

Also, one Harcourt, who testified as follows:

" John W. Harcourt, called by defendant, and duly sworn, testified : I am the general managing agent of the defendant at this end of the line, and have been for many years—about twenty or more—and previous to that I was with the defendant sixteen years. I was somewhat acquainted with the construction of defendant's boats, at the time they were being built, the Richmond among them. I think there has been no change in the construction of berths on the Richmond since 1867. I am generally acquainted with all important changes made upon the boats, or with the boats. I travel upon the boats frequently.

" Q. To your knowledge, there has been no change in the construction of berths since 1867, upon the Richmond ? A. No; not any.

" Q. Are you acquainted with the construction of steamboats generally ? Have you seen them in the process of construction ? A. I have seen some of it. I have seen the manner in which berths are put into boats—in other boats.

" Q. Were these berths constructed in the usual manner upon the best boats built, about the time these boats were built ?

" (Plaintiff objects ; excluded. Defendant excepts.)

" Cross-examination : I reside in Albany. The business that I have done for the defendant has been transacted principally in Albany. The repairs, alterations and changes made in these boats have been done in New York."

The testimony here closed, and defendant renewed a motion for nonsuit, upon grounds previously stated. The court denied the motion and defendant excepted.

*W. P. Prentice* and *J. H. Reynolds*, for the appellant.

*Miles Beach*, for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

Allen *v.* Brown.

By the Court. We think that the judge erred upon the trial in the rejection of evidence offered to prove, by the witnesses Dumont and Harcourt, the manner in which the berths of the steamer were. constructed. The testimony was material and bore upon the question of the defendant's negligence, and the witnesses, from their knowledge and experience, were competent to testify on the subject.

The court committed an error in refusing to charge the twelfth request made by the counsel for the defendant. The proposition there laid down was correct, and should have been presented to the jury.

There was also error in refusing the motion for a new trial upon the minutes, upon the ground that the damages were excessive. The amount of the verdict was large, and not commensurable with the character of the injury, which was merely a temporary loss of sight, if any. It evinces that the jury must have been misled or prejudiced, and presents a case for the interference of the court for that reason. As the grounds stated are sufficient to authorize a new trial, it is not important to examine the other questions raised.

The judgment and order must be reversed, and a new trial granted, costs to abide the event.

Judgment accordingly.